2011 OK 73

**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

**v.**

**Ronald Douglas COX, Respondent.**

**SCBD No. 5635.**

Supreme Court of Oklahoma.

July 6, 2011.

Ted Rossier, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Charles F. Alden III, Alden & Dabney, Oklahoma City, Oklahoma, for Respondent.

GURICH, J.

¶ 1 On March 25, 2010, the Oklahoma Bar Association ("OBA") filed a complaint against attorney Ronald Douglas Cox ("Cox") for alleged professional misconduct, as authorized by Rule 6.1 of the Rules Governing Disciplinary Proceedings ("RGDP").[1] Five specific violations were raised by the OBA, however two counts were voluntarily dismissed prior to introduction of evidence before the Professional Responsibility Tribunal ("PRT"). After receiving stipulations from the parties, hearing testimony of two witnesses, and being presented with several documentary exhibits, the PRT determined that Cox had violated Rules 1.3 and 8.1(b) of the Oklahoma Rules of Professional Conduct

---

1. 5 O.S.2001, ch. 1, app. 1–A.

("ORPC").[2] Additionally, the PRT found sufficient evidence to support a finding that Cox disregarded the requirements outlined in Rule 5.2 of the RGDP. The PRT's Trial Panel Report recommended Cox be publicly censured and ordered to pay all costs incurred by the OBA in connection with its investigation and prosecution of the disciplinary action.

### Factual and Procedural History

#### Count I

¶2 In Count I of its complaint, the OBA accused Cox of neglecting to complete a probate proceeding in which he had been hired, and failing to adequately communicate with his client regarding the case status. Cox was retained by Ray Davis in May of 2003 to provide legal services in the estate of Linnie B. Thomasson. Initially, Cox worked diligently to move the case forward, completing most of the tasks necessary to close the probate. On September 23, 2004, Cox appeared before the trial court for a hearing to obtain an order approving the personal representative's accounting and authorizing a partial distribution of assets. Because neither the estate tax return nor payment for the estate tax debt had been delivered to the Oklahoma Tax Commission ("OTC"), the trial judge directed Cox to confirm remittance of the tax liability before he would approve the proposed court order.

¶3 On September 30, 2004, Cox and Mr. Davis secured a cashier's check payable to OTC in satisfaction of the estimated estate tax. For reasons not clear from the record, neither the return nor the check were received by OTC.[3] Shortly after distributing probate assets and obtaining the check for taxes, Cox ceased working on the Thomasson matter. No further efforts to close the Thomasson estate took place for nearly three years.

2. 5 O.S.2001, ch. 1, app. 3–A.

3. According to Cox' testimony, the tax return and accompanying payment were to have been mailed by Mr. Davis in April 2004. A check dated April 12, 2004 was never delivered to OTC. As a result, a cashier's check was drafted on September 30, 2004, payable for the estate tax debt. However, the estate tax return and check

¶4 Mr. Davis subsequently discovered that an estate tax release had not been provided by OTC and a final accounting had not been prepared in the probate. Concerned about the unresolved status of the estate, Mr. Davis made several attempts to contact Cox by telephone and in person. Efforts to communicate with his attorney went unanswered. On May 9, 2007 an estate heir sent correspondence to the assigned district court judge expressing her concern over the incomplete probate. In response, the judge set the matter for a review hearing. During the August 7, 2007 review Cox was ordered to complete a final accounting within thirty (30) days, and to re-appear before the court on September 11, 2007. Cox did not appear at the scheduled hearing and did not complete the final accounting.

¶5 Mr. Davis filed a grievance against Cox on October 24, 2007. Following receipt of Cox's response to the grievance, the OBA placed the matter on hold to allow time for the tax matter to be settled and the probate case to be closed. Two requests for supplemental information were later sent by the OBA to Cox, however, no response was returned. OBA general counsel was forced to issue a subpoena directing Cox to appear for a deposition on July 1, 2008. During his deposition testimony, Cox assured the OBA he would make arrangements to finalize the probate case. By the time Mr. Davis' grievance was presented to the PRT, Cox had still not resolved the estate tax dilemma or closed the Thomasson probate.

#### Counts III & V

¶6 Originally the OBA Complaint contained five separate claims of professional misconduct. Counts III and V charged Cox with failing to "properly and adequately respond to the [OBA] general counsel" when asked to provide information regarding

were not received/processed by OTC. Several years later, Cox learned the original cashier's check had not been cashed. A stop payment was ordered by the bank, and a second draft was issued and delivered to OTC. Although OTC deposited the payment, the agency would not issue a release of tax liability until a proper estate tax return was submitted.

grievances submitted by former clients Jo Ann Burnett and James Edwards.[4] After receiving each client's protest, the OBA forwarded the grievances to Cox and asked for his response to the allegations. When Cox failed to address the inquiries, both matters were converted to formal investigations. On October 20, 2008, notices of the formal investigations were sent to Cox. Each letter informed Cox of the necessity to provide a sufficient response within twenty (20) days as required by RGDP Rule 5.2. After receiving no reply, the OBA delivered another letter to Cox on November 18, 2008, warning him that failure to comply would result in the issuance of a subpoena to compel his testimony and the production of applicable records. Nevertheless, Cox continued to disregard the requests, and approximately two months later, the OBA issued a subpoena duces tecum commanding Cox to appear for a deposition on January 28, 2009. Cox was properly served with the subpoena, yet he failed to appear. Instead, Cox faxed a letter to the OBA on the morning of January 28 seeking to reschedule the deposition.

¶ 7 Cox finally answered the formal inquiries on March 25, 2009. The OBA was dissatisfied with the lack of factual detail in his response letter, and the agency asked Cox to supply additional facts surrounding the complaints. When no response was forthcoming, the OBA sent two more letters to Cox expressing concern over his lack of compliance and urging a complete answer to the inquiries raised by the grievances. After the March 25th response letter, Cox never answered any of the OBA requests for information and made no attempt to reschedule the January 2009 deposition.

### PRT Findings & Recommendation

¶ 8 A hearing before the PRT was held on January 12, 2011. With only Counts I, III and V remaining, the parties entered into a number of stipulations. During his testimony before the panel, Cox acknowledged that the Thomasson case had still not been completed. A fellow attorney from Hugo, Oklahoma agreed to assume responsibility for completing the probate, with Cox bearing any attorney fees or associated costs.[5] In addition, Cox agreed to pay any expenses attributable to his neglect of the Thomasson estate, including any penalties or interest resulting from the failure to file the estate tax return. After weighing all of the testimony, exhibits and stipulations, the PRT determined Cox's inaction amounted to a violation of ORPC Rule 1.3.

¶ 9 In the stipulations set forth in the Amended Pretrial Order, Cox readily acknowledged his lack of cooperation with the OBA during its investigation of the bar grievances. The panel determined Cox's refusal to participate in the OBA grievance investigations was contrary to ORCP Rule 8.1(b) and RGDP Rule 5.2. As punishment, the PRT recommended Cox be publicly censured for breaching the standards of professional conduct. The panel also proposed assessment of costs against Cox as authorized by RGDP Rule 6.16.

### Standard of Review

¶ 10 Review of disciplinary proceedings before the PRT is conducted by this Court using a de novo standard. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Wilcox*, 2009 OK 81, ¶ 2, 227 P.3d 642, 647. As we have announced on numerous previous occasions:

> The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters.

*State of Oklahoma ex rel. Okla. Bar Ass'n v. Taylor*, 2003 OK 56, ¶ 2, 71 P.3d 18, 21, *citing State of Oklahoma ex rel. Okla. Bar Ass'n v. Todd*, 1992 OK 81, ¶ 2, 833 P.2d 260, 262. Factual and legal determinations reached by the PRT are not binding on us,

---

4. Burnett and Edwards filed grievances against Cox in May and August of 2008. At the PRT hearing, both the Burnett and Edwards grievances (Counts II and IV) were dismissed by the OBA, leaving only Counts I, III and V.

5. Subsequent to the PRT hearing, Cox notified this Court that substitute counsel had been appointed as Special Administrator in the Thomasson matter for purposes of closing the estate.

and any recommendations are merely advisory. *Id.* Likewise, we are required by RGDP Rule 6.12 to ensure the OBA has established charges of misconduct by clear and convincing evidence. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Kinsey,* 2009 OK 31, ¶ 13, 212 P.3d 1186, 1192. Admissions or stipulations must be supported by testimony and/or exhibits, and we will evaluate the weight and credibility of the evidence presented to determine if a lawyer has violated rules governing their professional conduct. *Id.*

### Analysis

■ ¶ 11 ORPC Rule 1.3 requires an attorney to act with "reasonable diligence and promptness" when representing a client in any legal matter. The Comments to Rule 1.3 read in relevant part:

[1] A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf . . .

[2] A lawyer's workload must be controlled so that each matter can be handled competently . . .

[3] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed . . . unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness . . .

[4] Unless the relationship is terminated as provided in Rule 1.16, a lawyer should

carry through to conclusion all matters undertaken for a client . . .

To establish a violation of Rule 1.3 in this case, the OBA relied on stipulations which were supported by both testimonial and documentary evidence. Cox's handling of the probate matter was replete with examples of neglect and procrastination. Perhaps the most discernible evidence of malfeasance is Cox's failure to complete his client's unfinished business even after the OBA issued numerous warnings. During his deposition in July of 2008, Cox assured the OBA that he would make arrangements to resolve the pending estate case. Yet, Cox appeared before the PRT two and a half years later having accomplished nothing. Consequently, we hold the evidence presented in support of Count I clearly and convincingly demonstrates Cox's violation of ORPC Rule 1.3. In addition, we find Cox's conduct amounted to violations of ORPC Rules 1.1, 1.4 and 3.2. *See State of Oklahoma ex rel. Okla. Bar Ass'n v. Kelley,* 2002 OK 10, ¶ 5, 48 P.3d 777, 779.

■ ¶ 12 In Counts III and V, Cox was charged with failing to provide the OBA with adequate and timely responses to client grievances. The PRT found violations of ORPC Rule 8.1(b) and RGDP Rule 5.2, based on the stipulations and evidence presented. Rule 8.1(b) prohibits an attorney from knowingly failing to respond to a request for information from an admissions or disciplinary authority.[6] Once a grievance has been submitted to the OBA and presented to an attorney, RGDP Rule 5.2 requires a written answer containing "a full and fair disclosure of all the facts and circumstances pertaining to the lawyer's alleged misconduct" within twenty (20) days of being served with notice of the complaint. Rule 5.2 further explains that failure to answer the OBA inquiry within the time limit provided, "shall be grounds for discipline."

---

**6.** An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, *shall not* :
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have

arisen in the matter, or *knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority,* except that this rule does not require disclosure of information otherwise protected by Rule 1.6. (Emphasis added).

¶ 13 The overwhelming evidence demonstrated Cox's refusal to address all three grievances in a timely manner. He was given opportunity after opportunity by the OBA to comply. Yet for more than three years, Cox failed to discharge his obligations under the rules governing the legal profession. Accordingly, we conclude the record contains more than sufficient evidence to establish Cox's violations of ORPC Rule 8.1(b) and RGDP Rule 5.2.

¶ 14 Cox has been a licensed attorney in Oklahoma since 1972. Prior to the three underlying complaints in this case, Cox had never been the subject of any disciplinary action. The record does not indicate Cox misused or diverted client funds for his own personal use.[7] To the extent any interest or penalties resulted from neglect of the Oklahoma estate tax return, Cox promised the PRT he would assume responsibility for those charges. Hack Welch, a colleague from Choctaw County, testified before the PRT and described Cox as an honest and competent attorney. Any negligent handling of the probate proceeding, according to Welch, was an aberration. Mr. Welch also agreed to assume the handling of the probate case to its conclusion at Cox's expense. Thus, Cox's neglect has not resulted in an economic injury to his client or the estate beneficiaries.

¶ 15 Further, during the period of time in which Cox mishandled the probate case and dismissed inquiries from the OBA, he was undergoing personal problems. Cox's wife was seriously ill and the couple began experiencing financial difficulties in connection with a failing business venture. Finally, Cox unequivocally accepted responsibility for his unprofessional conduct, expressed remorse for those violations, and vowed not to repeat such transgressions in the future.

### Discipline

¶ 16 Under the circumstances we find Cox's mishandling of the estate of Linnie B. Thomasson was a violation of ORPC Rules 1.1, 1.3, 1.4 and 3.2. Additionally, refusal to cooperate with the OBA during an investigation of alleged misconduct will not be tolerated by this Court. Cox did not answer multiple inquiries from the OBA, failed to comply with a properly issued subpoena, and did not provide complete information to the OBA during its investigation. Violations of ORCP Rule 8.1(b) and RGDP Rule 5.2, were also supported by the evidence.

¶ 17 Disciplinary action imposed by this Court for neglect of client matters and failure to cooperate with OBA investigations has ranged from public censure to suspension from the practice of law. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Hulett,* 2008 OK 38, ¶ 17, 183 P.3d 1014, 1019–1020. In reaching our decision, we are mindful of the primary aim in attorney disciplinary proceedings—to maintain the integrity of the profession and the judicial system and to protect the public and the courts. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Wilcox,* at ¶ 67, 227 P.3d at 663. This Court has generally found public censure to be the appropriate penalty in cases involving attorney neglect when the record does not reflect affirmative acts of harmful conduct against a client. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Green,* 1997 OK 39, ¶ 42, 936 P.2d 947, 957. The present case is very similar to the facts weighed by the Court in *State of Oklahoma ex rel. Okla. Bar Ass'n v. Brewer,* 1999 OK 101, ¶¶ 2–6, 998 P.2d 605, 606–609. As in the instant proceeding, *Brewer* involved an attorney's failure to complete a probate matter and his additional failure to adequately respond to inquiries from the OBA. We determined public censure was the appropriate level of punishment in that case.

7. Although the heirs in the probate case initially believed Cox had misappropriated a portion of estate monies, that suspicion was later dispelled. The sum of $20,000.00 was retained in an estate bank account after paying the partial distribution to heirs. This amount was earmarked for payment of taxes due the OTC in accordance with the return prepared for the estate. A cashier's check from those funds was secured by Cox and delivered to OTC. The check was never negotiated by the OTC, however the checking account reflected a debit associated with the check's issuance. This error was later discovered, and the original check was cancelled and a new check issued to pay the tax liability.

¶ 18 Both Cox and the OBA agree with the findings and recommendations for punishment issued by the PRT. Given the mitigating factors offered in support of Cox, we hold the appropriate discipline in this case to be a public censure by written opinion. The Complainant OBA's Application to Assess Costs is sustained, and Cox is directed to pay costs in the amount of $1,012.85 within thirty (30) days from the date this opinion becomes final.

**IN ACCORDANCE WITH RULE 1.7 OF THE RULES GOVERNING DISCIPLINARY PROCEEDINGS, COX IS PUBLICLY CENSURED; COX IS ORDERED TO PAY COSTS IN THE AMOUNT OF $1,012.85 WITHIN THIRTY (30) DAYS FROM THE DATE THIS OPINION BECOMES FINAL.**

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, J., WATT, J., WINCHESTER, J., EDMONDSON, J., REIF, J., GURICH, JJ., concur.

COMBS, J., not participating.