OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BOONE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BOONE
2016 OK 13
Case Number: SCBD-6302
Decided: 02/09/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 13, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
RONALD R. BOONE, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 The Oklahoma Bar Association filed a Complaint against Ronald R. Boone alleging multiple violations of the Oklahoma Rules of Professional Conduct, 5 O.S. 2011, Ch. 1, App. 3-A, and the Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A. The Oklahoma Bar Association raised two counts. The first count alleges Boone failed to communicate adequately with a client and neglected the client's case resulting in the client's lawsuit being filed outside the time allowed by the statute of limitations and subsequently dismissed. The second count alleges Boone failed to timely respond to the notice of the grievance.

RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW
FOR SIX (6) MONTHS; SUPERVISION IMPOSED; ORDERED TO PAY 
COSTS

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Ronald R. Boone, Norman, Oklahoma, Pro Se.

COMBS, V.C.J.:

¶1 This matter comes before the Court pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A. On August 28, 2015, Complainant Oklahoma Bar Association (OBA/Complainant) filed its Complaint against Respondent Ronald R. Boone (Respondent), OBA No. 14080, alleging two counts of misconduct in violation of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2011, Ch. 1, App. 3-A, and the RGDP, 5 O.S. 2011, Ch. 1, App. 1-A. Respondent stipulated to Complainant's allegations of misconduct. A panel of the Professional Responsibility Tribunal (PRT) conducted a hearing on October 21, 2015. The Report of the Trial Panel, filed on November 18, 2015, expressed the PRT's determination that clear and convincing evidence supported Complainant's allegations that Respondent violated mandatory provisions of the ORPC and RGDP and that discipline should be imposed.

I.
STANDARD OF REVIEW

¶2 This Court's review in bar disciplinary proceedings is de novo. State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29, ¶6, 275 P.3d 133; State ex rel. Okla. Bar Ass'n v. Wilcox, 2009 OK 81, ¶2, 227 P.3d 642; State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, ¶2, 71 P.3d 18. Deciding whether misconduct has occurred and what discipline is warranted if misconduct is found is the ultimate responsibility of this Court in the exercise of our exclusive original jurisdiction in bar disciplinary matters. Conrady, 2012 OK 29, ¶6; Taylor, 2003 OK 56, ¶2; State ex rel. Okla. Bar Ass'n v. Todd, 1992 OK 81, ¶2, 833 P.2d 260.

¶3 In fulfilling our responsibility, the factual and legal determinations of the PRT are not binding on this Court, and its recommendations are merely advisory.[1] Conrady, 2012 OK 29, ¶6; Taylor, 2003 OK 56, ¶2; Todd, 1992 OK 81, ¶2. Even when the parties stipulate to misconduct, the stipulations do not bind us for our duty is to review the evidence de novo to decide if misconduct allegations are established by clear and convincing evidence. Conrady, 2012 OK 29, ¶6; State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, ¶12, 212 P.3d 1186; Taylor, 2003 OK 56, ¶2. Upon a thorough review of the record, we conclude it is sufficient for this Court's de novo inquiry and imposition of discipline.

II.
FACTS

A. Count I - The Posey Grievance

¶4 Complainant asserts Respondent violated Rules 1.1,[2] 1.3,[3] 3.2,[4] and 8.4(a) & (d),[5] ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, and Rule 1.3,[6] RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, in the course of representing a client, Harold R. Posey, III (Posey). On April 30, 2012, Posey was involved in an automobile collision in McClain County, Oklahoma. Posey's vehicle was struck by a motor vehicle owned by Ericka Smith, but being driven by Alan Dewitt Chappell, a suspected drunk driver who fled the scene of the accident. Posey suffered personal injuries and sustained property damage to his vehicle. After the collision, Posey was transported by ambulance to Norman Regional Health System for treatment. The record indicates the cost of Posey's treatment was $8,856. Exs. 3, 4, & 16.

¶5 On or about May 3, 2012, Posey hired Respondent to represent him for the purpose of recovering property damages and compensation for medical expenses resulting from the collision. By May 23, 2012, Respondent had negotiated property damages for Posey. However, after this it became increasingly difficult for Posey to communicate with Respondent. Posey testified at the hearing before the PRT that communication was sporadic in the first six months after the property damage settlement, and then became almost non-existent. Tr. 26-28. After Posey instructed Respondent to reject the initial settlement offer for medical expenses, Posey became essentially unable to contact Respondent and Respondent failed to provide Posey with any updates regarding his case. Tr. 27. In order to explain his lack of communication, Respondent asked questions of Posey at the hearing illustrating that Posey and Respondent agreed to wait and file suit near the end of the allowable time period in order to see if there was any further deterioration in Posey's condition before the suit was filed, and that Respondent asked Posey to let him know if his condition changed. Tr. 35-36. This was also Respondent's recollection of his plan concerning Posey's case. Tr. 93

¶6 Respondent testified that he became aware, three to four months before the statute of limitations cutoff that a settlement would not be possible and he would need to file a lawsuit. Tr. 128-29. On May 1, 2014, Respondent filed a civil suit on behalf of Posey seeking in excess of $10,000, styled Harold Ray Posey, III v. Alan Dewitt Chappell and Ericka Kathleen Smith, McClain County District Court, Case No. CJ-2014-72. Ex. 6. Respondent filed this suit one day after the two-year statute of limitations had run on April 30, 2014. The defendants to the suit filed special appearances and motions to dismiss, citing the failure to file the matter within the time prescribed by the statute of limitations. The court held hearings at which Respondent did not appear, and dismissed Posey's petition. Ex. 6.

¶7 After experiencing rising frustration and lack of communication, Posey terminated Respondent's services in late 2014 and requested a copy of his file. Posey testified that it took him some time to obtain a copy of his file from Respondent, but he was finally able to do so sometime in December, 2014 or January, 2015. Tr. 28-29. After obtaining his file, Posey called the insurance company to check on the status of his medical claim and learned, for the first time, that a lawsuit had been filed and subsequently dismissed because of Respondent's failure to file within the statute of limitations. Tr. 29. The following exchange occurred while Posey was being questioned by the PRT:

Q: And do I understand your testimony correctly, Mr. Posey, that you did not understand that, number one, a lawsuit had been filed, and number two, a lawsuit had been dismissed, until you talked to the insurance company?

A: That is correct.

Tr. 60.

¶8 Respondent, over the course of his representation of Posey: 1) failed to communicate with Posey despite Posey's repeated attempts to contact Respondent; 2) failed to keep Posey updated concerning the status of his case; 3) failed to file Posey's lawsuit until after the statute of limitations had run; and 4) failed to timely provide Posey's file after Posey had terminated his services and requested it be returned to him. Clear and convincing evidence exists in the record before this Court that Respondent violated Rules 1.1, 1.3, 3.2, and 8.4(a) & (d), ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, and Rule 1.3, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, over the course of his representation of Posey.

B. Count II - Failure to Timely Respond to the Office of the General Counsel

¶9 Complainant asserts Respondent violated Rule 8.1(b),[7] ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, and Rules 1.3[8] and 5.2,[9] RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, by failing to timely respond to the OBA Office of the General Counsel. On April 16, 2015, the OBA received a written grievance from Posey detailing Respondent's neglect in the personal injury case. Ex. 7. In a letter dated April 27, 2015, and mailed to Respondent's official roster address via regular mail, Complainant notified Respondent it was opening Posey's grievance for formal investigation and he was required to respond within twenty (20) days pursuant to Rule 5.2, RGDP, 5 O.S., Ch. 1, App. 1-A. Ex. 8.

¶10 While Respondent admits in his Answer that he did not respond to this letter within twenty (20) days as required by the rule, he testified at the hearing before the PRT that this was because he never saw the letter, stating: "I did not see the letter. I could not find the letter in - - in the office. I could not find it. It wasn't in the file." Tr. 103. Respondent's Answer reflects this, as receipt of this letter is one of the few things he does not admit to. During the hearing before the PRT, Complainant's attorney testified that the April 27, 2015, letter to Respondent was sent regular mail, with no return receipt requested. Tr. 125. She testified it was the bar's position that he received this letter and failed to respond, his claims to the contrary notwithstanding. Tr. 125-126.

¶11 Having not received a response from Respondent, on May 21, 2015, Complainant sent a second letter via certified mail to Respondent's roster address. Ex. 9. This letter requested a written response from Respondent within five (5) days. On May 26, 2015, Complainant received the return receipt from the United States Postal Service indicating that the May 21, 2015, letter sent via certified mail was received and signed for at Respondent's official roster address by Sherry Rodman on or about May 22, 2015.

¶12 Respondent did respond to this second mailing from Complainant. In a letter dated May 27, 2015, and received by Complainant on June 1, 2015, Respondent admitted to filing Posey's lawsuit outside of the statute of limitations. By way of explanation, Respondent stated:

[i]n preparing this response I realized that my note on the statute of limitations was incorrect. I had noted that May 1 was the last date that the case could be filed rather than April 30th and had docketed it that way. Since 2012, with the assistance of Mr. Callaway, I have changed procedures and checklist to insure issues like this do not occur in the future.

Letter from Respondent, May 27, 2015, Ex. 11.

¶13 This Court is troubled by Complainant's mechanical application of the rules in this instance. While Respondent stipulated to Complainant's allegations of rule violations stemming from his failure to respond, he also claims he did not receive the original letter upon which Complainant's failure to respond allegations are based. Because this original letter was not sent via certified mail, there is no evidence in the record that Respondent did in fact receive and then ignore the April 27, 2015, letter. It is Complainant's position that this letter was received by Respondent, though there is no confirmation in the record before this Court. Respondent responded quickly to the second communication from the OBA, sent via certified mail, which the record indicates he did receive.

¶14 This Court has previously stated that the provisions of Rule 5.2, RGDP, 5. O.S. 2011, Ch. 1, App. 1-A, are mandatory. Taylor, 2000 OK 35, n. 35; State ex rel. Okla. Bar Ass'n v. Perry, 1997 OK 29, ¶33, 936 P.2d 897. However, in applying Rule 5.2 this Court stated: "[a] knowing failure to respond fully and timely to the Bar's demand for information in a disciplinary proceeding is itself grounds for discipline." Taylor, 2000 OK 35, ¶24. Similarly, Rule 8.1, ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, requires an attorney not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

¶15 Complainant's assertion is that given Respondent's office organizational troubles, its original notice, sent regular mail, should be considered received by Respondent even though there is no evidence in the record that it was, and Respondent denies ever having seen the letter. Tr. 125. We disagree. Consistently in prior cases this Court has imposed discipline for failure to respond to a grievance under circumstances involving numerous notification attempts where attorneys were given ample opportunity to respond.[10]

¶16 Rule 5.2, RGDP, 5 O.S.2011, Ch. 1, App. 1-A, does not specify the method by which a respondent attorney must be served with a copy of the grievance. However, if, as here, the OBA wishes this Court to impose discipline when an attorney fails to respond to its first attempt at communication the evidence must be clear and convincing. Such evidence is lacking in this matter. Rather the evidence is clear Mr. Boone fully cooperated as soon as there was clear and convincing evidence he received actual notice. Perhaps the OBA should begin utilizing certified mail for its initial communication under Rule 5.2.

¶17 Respondent stipulated to the rules violations alleged by Complainant as part of Count II. However, Respondent's stipulations do not absolve Complainant of its duty to demonstrate alleged misconduct by clear and convincing evidence. Conrady, 2012 OK 29, ¶6; Kinsey, 2009 OK 31, ¶12; Taylor, 2003 OK 56, ¶2. The record before this Court does not contain clear and convincing evidence that Respondent committed the alleged violations of Rule 8.1(b), ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, and Rules 1.3 and 5.2, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, constituting Count II of the Complaint.

III.
ANALYSIS AND DISCIPLINE TO BE IMPOSED

¶18 In disciplinary proceedings, the responsibility of this Court is not to punish, but instead to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. State ex rel. Okla. Bar Ass'n v. Friesen, 2015 OK 34, ¶18, 350 P.3d 1269; State ex rel. Okla. Bar Ass'n v. Layton, 2014 OK 21, ¶34, 324 P.3d 1244. Discipline should always be administered fairly (i.e. evenhandedly), but this Court recognizes that the extent of discipline must be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances. State ex rel. Okla. Bar Ass'n v. Wintory, 2015 OK 25, ¶15, 350 P.3d 131; State ex rel. Okla. Bar Ass'n v. Wilcox, 2014 OK 1, ¶54, 318 P.3d 1114; State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94, ¶38, 991 P.2d 1015.

¶19 To arrive at appropriate discipline, one fit factor to consider is the deterrent effect upon both the offending respondent and other attorneys who might contemplate similar conduct in the future. Doris, 1999 OK 94, ¶37; State ex rel. Okla. Bar Ass'n v. McMillian, 1989 OK 16, ¶24, 770 P.2d 892; State ex rel. Okla. Bar Ass'n v. Hall, 1977 OK 117, ¶12, 567 P.2d 975. Other factors properly considered include comparing the circumstances in the matter at hand with previous disciplinary matters, and examining an attorney's past record of professional behavior. Taylor, 2003 OK 56, ¶22; Doris,1999 OK 94, ¶38; State ex rel. Okla. Bar Ass'n v. Meek,1994 OK 118, ¶14, 895 P.2d 692. Mitigating circumstances may also be considered in gauging the proper measure of discipline. Taylor, 2003 OK 56, ¶22; State ex rel. Okla. Bar Ass'n v. Thomas, 1995 OK 145, ¶17, 911 P.2d 907.

A. Prior Misconduct

¶20 Respondent has come to display a disturbing pattern of failing to communicate with clients and neglecting their cases. Respondent has already received two prior private reprimands for similar problems to those arising in this matter. On July 22, 2010, Respondent was issued a Private Reprimand by the Professional Responsibility Commission (PRC) in OBAD #1825 for neglecting a client's lawsuit which resulted in the case being dismissed for failure to prosecute. Ex. 14.

¶21 Respondent received a second private reprimand from the PRC on May 24, 2013, in OBAD #1957, for failure to properly communicate with a client throughout her divorce proceedings and also failing to respond to the Office of the General Counsel. Ex. 15. Respondent's private reprimand in that matter was issued after he successfully completed the Attorney Diversion Program wherein he participated in educational courses designed to address client neglect and communication issues and improve law office management skills. Complainant raised both these prior disciplinary matters and their surrounding circumstances in its Complaint, and Respondent admitted to the same.

B. Mitigation

¶22 Respondent called witnesses to testify at his hearing before the PRT in the interest of mitigation. The Honorable Charles Gray, Associate District Judge in McClain County, testified he has known Respondent since the 1990s. Tr. 6. Respondent has appeared before Judge Gray on multiple occasions, and Judge Gray testified that he has always been prepared and impeccable. Tr. 7. Judge Gray testified that he does not know the details of the complaint, but cannot conceive of Respondent attempting to sabotage a client. Tr. 9 & 13. While Judge Gray testified that Respondent has never failed to appear or been unprepared in front of him, he did testify that he is not familiar with the manner in which Respondent operates his office. Tr. 14.

¶23 Respondent also called Tim Kuykendall (Kuykendall) as a witness at his PRT hearing. He served as District Attorney for Cleveland County and Respondent worked for him as an Assistant District Attorney from 1995 to 2006. He testified that he believes Respondent is a competent attorney and never had any complaints or problems with Respondent while he was Respondent's employer. Tr. 65. However, Kuykendall did testify that he believes Respondent has two significant weaknesses he needs to address: docketing and failure to retain competent support staff. Tr. 67-68. Kuykendall is now in private practice and has office space nearby to Respondent, and testified that he has observed clients come to Respondent's office to meet with him when he is not there, for appointments he does not know are set. Tr. 69-70.

¶24 The parties stipulated to the testimony of the OBA's investigator, Tanner Condley, who was not present at the hearing. The parties agreed he would testify that Respondent was fully cooperative with the investigation, was remorseful, and accepted responsibility for his client neglect. Tr. 138-39. Respondent himself testified to his remorse, offered to make restitution to Posey, and asserted that during the time the violations occurred his wife was recovering from a car accident and he spent much of his time caring for her. Tr. 112-13.

C. Appropriate Discipline

¶25 Complainant originally recommended that Respondent receive a thirty-day suspension and a six-month probationary period, during which Respondent might be subject to further suspension if he failed to meet expectations. In its Report, the PRT noted it was convinced Respondent was remorseful, had acknowledged his mistakes, and taken steps to remedy problems with the management of his office. However, the PRT also noted it would like to see Respondent's commitment implemented successfully and recommended a suspension of thirty days followed by a probationary period of eleven months. The PRT recommended Respondent should be assigned a supervising attorney during his probation, with whom he should be required to meet on a regular basis and not less than once a month. Finally, the PRT recommended Respondent make the following payments: 1) $8,856 to resolve Posey's medical bills; 2) an additional $5,000 for Posey's pain and suffering; and 3) the costs of the disciplinary action.

¶26 The PRT's findings regarding the Posey grievance (Count I) are supported independently by clear and convincing evidence, in addition to Respondent's admissions. However, while this Court agrees that discipline is warranted, it cannot accept the disciplinary recommendation of the PRT. Prior decisions of this Court indicate a varying range of discipline possibilities for conduct like Respondent's, almost all of which involve a longer suspension than that recommended by the PRT.

¶27 In State ex rel. Okla. Bar Ass'n v. McCormick, 2013 OK 110, 315 P.3d 1015, this Court suspended an attorney for eighteen months and imposed costs for abandoning a personal injury client--allowing the statute of limitations to run--and failing to respond to the OBA's allegations of misconduct. Much as in this cause, the client suffered physical bodily injury as a result of an auto accident and hired the respondent attorney after the accident to handle her personal injury claim for medical bills. McCormick, 2013 OK 110, ¶8. After the respondent attorney rejected a settlement offer at his client's request, the client was unable to communicate with him further despite trying to call him, per her testimony, at least 100 times. McCormick, 2013 OK 110, ¶8. This Court determined the appropriate range of discipline to be between a sixty-day suspension and disbarment, but imposed the eighteen-month suspension because the respondent attorney had failed to cooperate with the investigation and offer mitigating factors. McCormick, 2013 OK 110, ¶23-27.

¶28 By way of contrast, in State ex rel. Okla. Bar Ass'n v. Loeliger, 2005 OK 79, 127 P.3d 591, this Court imposed a sixty-day suspension and costs upon an attorney who failed to file a case on behalf of a client before the action became barred by time. The respondent attorney then misled the client, insisting that settlement negotiations were ongoing, in order to conceal the negligence. The charade extended to the lawyer drafting fake pleadings and offering a settlement check to the client out of his own funds. Loeliger, 2005 OK 79, ¶¶17-18. This Court noted it had imposed suspensions of up two years in previous cases for similar conduct, but found the respondent attorney's lack of prior discipline, payment of restitution, and the death of the attorney's father to be strong mitigating factors. Loeliger, 2005 OK 79, ¶23.

¶29 In State ex rel. Okla. Bar Ass'n v. Giessmann, 1997 OK 146, 948 P.2d 1227, this Court disciplined an attorney for failure to diligently represent a client, resulting in a delay of several years in the client's case, and for failure to keep the client informed. Though the PRT and attorney had agreed on a private reprimand, this Court found the appropriate discipline to be a ninety day suspension and the payment of costs. Giessmann, 1997 OK 146, ¶13. This Court based its decision in part on the fact that the respondent attorney had been disciplined twice previously. Giessmann, 1997 OK 146, ¶13.

¶30 In State ex rel. Okla. Bar Ass'n v. Busch, 1993 OK 72, 853 P.2d 194, this Court disciplined an attorney for failing to file a client's claim but allowing the client to believe that he had, amongst other rule violations. The respondent attorney also failed to timely respond to the OBA. Busch, 1993 OK 72, ¶5. This Court imposed a ninety day suspension and costs, with an additional year of probation, taking into account the fact that the attorney had previously been censured and placed under the supervision of another attorney. Busch, 1993 OK 72, ¶17.

¶31 Respondent's prior conduct illustrates that another reprimand or a very brief suspension will not be sufficient to convince Respondent of the need to get his practice in order to prevent future harm to clients. Respondent's issues with deadlines and client communication continued even after he completed a diversion program designed to help him overcome these issues after receiving a private reprimand for similar conduct. Testimony offered in mitigation on behalf of Respondent indicates that while he is not intentionally setting out to harm his clients, he has ongoing issues with his practice that thus far he has failed to adequately address.

¶32 As stated previously, the goal of discipline is not to punish, but to ensure competency to practice law and protect the public. Given Respondent's prior warnings and continuing problems with addressing the underlying reasons for his misconduct, this Court must go beyond the PRT's disciplinary recommendation in order to ensure the above-stated goals are met.

¶33 It is the determination of this Court that Respondent shall be suspended from the practice of law for a period of six (6) months. Additionally, this Court agrees that supervision is necessary to maintain order in Respondent's practice and to ensure that his clients' cases are monitored.[11] Upon the conclusion of Respondent's suspension, Respondent shall be required to meet once a month with an OBA lawyer-member of the General Counsel's choice who shall serve as a supervising attorney for Respondent for a period of twelve (12) months. This supervising attorney will review Respondent's office procedures and help address issues and concerns. Any concerns of neglect or other misconduct on the part of Respondent shall be immediately reported to the OBA. This Court declines to mandate any form of monetary compensation between Respondent and Posey.[12]

¶34 Complainant filed an application to assess costs in the amount of $1,614.89, pursuant to Rules 6.13 and 6.16, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A.[13] Complainant's application is granted and Respondent is ordered to pay costs in the amount of $1,614.89 within ninety (90) days of the effective date of this opinion.

RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW
FOR SIX (6) MONTHS; SUPERVISION IMPOSED; ORDERED TO PAY 
COSTS

ALL JUSTICES CONCUR 

FOOTNOTES

[1] Notably, the Conclusions of Law section of the Report of the Trial Panel makes no mention of the rule violations Respondent was accused of committing, and stipulated to, as part of Count I of the OBA's Complaint, despite discussing them elsewhere. The relevant section of the PRT's Report provides in full:

It has been stipulated that Mr. Boone's conduct violated the provisions of Rule 8.1(b), ORPC and Rules 1.3 and 5.2 RGDP; [sic] Additionally, it was agreed at trial that Mr. Boone also violated the mandatory provisions of Rule 8.1(b), ORPC, and Rules 1.3 and 5.2 RDGP. This was presented by clear and convincing evidence at the trial. These violations warrant the imposition of professional discipline.

Report of the Trial Panel, p. 12. As the PRT's findings of fact and conclusions of law are merely advisory, omissions from the PRT's Report do not limit the scope of this Court's disciplinary proceedings so long as the record itself is sufficient for review. See Rule 6.15, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A; State ex rel. Okla. Bar Ass'n v. Besly, 2006 OK 18, ¶2, 136 P.3d 590.

[2] Rule 1.1, ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

[3] Rule 1.3, ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

[4] Rule 3.2, ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

[5] Rule 8.4, ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

[6] Rule 1.3, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[7] Rule 8.1, ORPC, 5 O.S. 2011, Ch. 1, App. 3-A, provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[8] Rule 1.3, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[9] Rule 5.2, RGDP, 5. O.S. 2011, Ch. 1, App. 1-A, provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' [sic] or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

[10] See State ex rel. Okla. Bar Ass'n v. McCormick, 2013 OK 110, ¶¶20-21, 315 P.3d 1015 (attorney failed to respond to three letters, and then failed to claim a certified letter); State ex rel. Okla. Bar Ass'n v. Cox, 2011 OK 73, ¶6, 257 P.3d 1005 (Attorney failed to respond to two letters and failed to appear after receiving subpoena); State ex rel. Okla. Bar Ass'n v. Kinsey, 2008 OK 98, ¶16, 205 P.3d 866 (attorney given notice of allegations and multiple opportunities to respond, and instead of responding her communications consisted of excuses and requests for more time); State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, ¶¶10-11, 23 P.3d 268 (attorney was sent two letters, requested an extension of time, and still failed to respond after the extension was granted and after receiving a third letter via certified mail). But see State ex rel. Okla. Bar Ass'n v. Wilcox, 2009 OK 81, ¶¶22-28, 227 P.3d 642 (attorney held to have violated Rule 5.2 despite his assertions that he did not receive the first two letters from the OBA).

[11] This Court has previously ordered supervision as part of discipline in order to correct problems in an attorney's practice, so as to preserve the integrity of the bar and courts and to protect the public. See State ex rel. Okla. Bar Ass'n v. Prather, 1996 OK 87, 925 P.2d 28.

[12] In this matter, Posey has not stated with finality he would accept Respondent's offer, and the issue was raised quickly at the PRT hearing before Posey had an opportunity to consult an independent attorney concerning any possible claims he might have against Respondent. Tr. 40-42. This Court has historically been reluctant to impose monetary sanctions, apart from costs, as part of disciplinary proceedings, for a host of reasons including: 1) a desire not to adjust private claims in a disciplinary case by resort to "restitution" when the rights of the parties vis-a-vis one another are to be settled in pending civil litigation; and 2) due process issues raised by lack of support in the record for a concrete amount. State ex rel. Okla. Bar Ass'n v. Leigh, 1996 OK 37, ¶¶15-19, 914 P.2d 661.

[13] Rule 6.13, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, provides:

Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. A copy of the Report is concurrently to be served on the General Counsel, the respondent and his attorneys (if any). The thirty (30) day period referred to above may be extended only by the Chief Justice, for good cause shown.

Rule 6.16, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A, provides:

The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 16, 770 P.2d 892, State ex rel. Oklahoma Bar Ass'n v. McMillian
Discussed
 1992 OK 81, 833 P.2d 260, 63 OBJ 1714, State ex rel. Oklahoma Bar Ass'n v. Todd
Discussed at Length
 1993 OK 72, 853 P.2d 194, 64 OBJ 1742, State ex rel. Oklahoma Bar Ass'n v. Busch
Discussed at Length
 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed
 1994 OK 118, 895 P.2d 692, 65 OBJ 3693, State ex rel. Oklahoma Bar Ass'n v. Meek
Discussed
 1997 OK 29, 936 P.2d 897, 68 OBJ 921, State ex rel. Oklahoma Bar Assn. v. Perry
Discussed
 1995 OK 145, 911 P.2d 907, 66 OBJ 3991, State ex rel. Oklahoma Bar Assn. v. Thomas
Discussed
 2003 OK 56, 71 P.3d 18, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed at Length
 2005 OK 79, 127 P.3d 591, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LOELIGER
Discussed at Length
 2006 OK 18, 136 P.3d 590, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BESLY
Discussed
 1996 OK 37, 914 P.2d 661, 67 OBJ 943, State ex rel. Oklahoma Bar Assn. v. Leigh
Discussed
 1996 OK 87, 925 P.2d 28, 67 OBJ 2305, State ex rel. Oklahoma Bar Assn. v. Prather
Discussed
 2008 OK 98, 205 P.3d 866, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed at Length
 2009 OK 81, 227 P.3d 642, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length
 2011 OK 73, 257 P.3d 1005, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COX
Discussed
 2012 OK 29, 275 P.3d 133, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CONRADY
Discussed at Length
 2013 OK 110, 315 P.3d 1015, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McCORMICK
Discussed at Length
 2014 OK 1, 318 P.3d 1114, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed
 2014 OK 21, 324 P.3d 1244, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LAYTON
Discussed
 1977 OK 117, 567 P.2d 975, STATE EX REL. OKL. BAR ASS'N v. HALL
Discussed
 2015 OK 25, 350 P.3d 131, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WINTORY
Discussed
 2015 OK 34, 350 P.3d 1269, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FRIESEN
Discussed
 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. Doris
Discussed at Length
 2000 OK 35, 4 P.3d 1242, 71 OBJ 1163, State ex. rel. Oklahoma Bar Assn. v. Taylor
Discussed
 1997 OK 146, 948 P.2d 1227, 68 OBJ 3881, STATE ex rel. OKLAHOMA BAR ASS'N v. GIESSMANN
Discussed at Length